LEIGH M. CLARK, Supernumerary Circuit Judge.
Appellant was tried on an indictment charging murder in the first degree, found guilty of murder in the second degree and sentenced to fifteen years imprisonment.
Appellant and the victim had known each other for several years; they lived in Northport, Tuscaloosa County; each had a wife and a family. They had two major interests in common, the chief one being the wife of deceased and the other, red whiskey and beer.
The evidence is undisputed that defendant killed the victim by shooting him with a pistol while they were together at the home of defendant, about three miles from the home of the victim. No one else was present at the time. Circumstantial evidence presented by the State pointed almost certainly to the conclusion that the victim was killed by defendant, even before he so testified on the trial.
Under the plea of not guilty, defendant relied chiefly upon the defense of self-defense.
According to the undisputed evidence, defendant had been with the wife of the victim approximately all of the daylight hours of October 22, 1974, and a part of the night before. In the late afternoon of October 22, the victim returned from work to his home where his wife and defendant were at the time. Defendant and the victim then went for some liquor and beer and the three, accompanied by others, did some heavy drinking. The relation between defendant and the victim’s wife is probably epitomized by the following part of her testimony:
“Q Now I think you mentioned you had had an affair with Hugo, and how long did you say the affair had been going on?
“A A good while.
“Q Pardon me?
“A A good while. I don’t know.
“Q Were they good enough friends you all visited back and forth and not necessarily when the wife or husband was home or what?
“A Right. He didn’t care.
“Q He didn’t care?
“A He didn’t seem to.”
During the evening of revelry, Frank Long, Jr., the victim, took a knife out of his pocket, opened it and put the blade of the knife against defendant’s neck. The circumstances shown by the evidence permit an inference that there was some threat by deceased to kill defendant; on the other hand an inference is permissible that no one took the deceased seriously. It was not a large knife, being referred to by the wife of deceased as a “little frog sticker.” She said that when she told her husband to put it back in his pocket, he said, “I was just playing with Hugo.”
The testimony is undisputed that defendant and the victim left the victim’s home in defendant’s automobile about eight or eight-thirty P.M. Defendant testified that the victim did not stay in defendant’s automobile after the automobile had been driven a few blocks, but that within the next hour the victim knocked at the door of defendant’s home and entered it when defendant cracked the door. Soon thereafter neighbors heard gunshot sounds, and after fifteen or twenty minutes they heard an automobile being driven from defendant’s home. There was no detection of any crime until two days later when the victim’s body was found in the Hopewell Cemetery, in *1341 Pickens County. Upon investigation by the authorities and questioning of defendant, he left the State, first going to Texas and then to Chicago, after leaving the pistol used in the killing, and his automobile, with a friend, stating to the friend, “Well, I got the hat,” meaning, according to the testimony of the friend, “he had to leave.” Defendant was not apprehended until he turned himself in at Tuscaloosa on February 20, 1976.
Appellant’s main contention in support of his argument for a reversal is that it was reversible error for the trial court to include in its oral charge to the jury on the subject of the defense of self-defense, the element of freedom from fault. The particular contention, as made promptly after the oral charge was given, was as follows:
“MR. SOGOL: Further, we would except that the State has not met the burden of showing the defendant was not free from fault and we except to Your Honor including that as an element in the charge of self-defense.”
Defendant testified positively that soon after the victim entered defendant’s house, they both sat down for a while, then defendant went to the bathroom and as he returned, the deceased “came out with a knife,” that defendant asked him what was wrong with him; that the deceased said, “I have come to get it over with”; and that upon being asked what he meant, the deceased stated, “You know what it is all about.” According to defendant, he pleaded with the deceased to “Shut the knife up and leave, just get out of the house.” He said that then the deceased “made an attempt to get up with the knife,” that deceased “lunged” at defendant “with a knife,” that “he didn’t do anything with the knife because I shot. When he out with the knife I also pulled a pistol.” Defendant was not certain how many times he shot, whether four, three or five shots were fired, but it is certain that one bullet entered the left temple of deceased and killed him almost instantly.
Expert testimony was to the effect that a sample of blood taken from deceased showed, “An alcohol level of 0.24 percent,” which denoted that the victim at the time of his fatal injury was “sloppy drunk.” Further testifying on the subject, the expert witness described the condition of a person in such a state of intoxication as “the character, if you saw him walk, the subject would stagger markedly. His coordination would be very poor.” Other expert testimony was to the effect that there were no powder burns upon deceased within the area of the place where the bullet entered his head.
We have no difficulty in concluding that there was ample evidence to support the finding of the jury that the homicide was not justified on the theory of self-defense, particularly in that defendant was not in such real or apparent danger of death or great bodily harm as to make it reasonably necessary for defendant to kill him, as he did. The circumstances of the killing as narrated by defendant himself were sufficient to justify such a finding. In addition, the jury had the right to consider, as evidence of defendant’s consciousness of guilt, his macabre effort to dispose of the body of his victim and his flight from the State for more than a year.
It is not necessary for us to decide whether, as contended by appellant, a jury issue was presented in favor of the State on any question of defendant’s freedom from fault in bringing on the difficulty. The portion of the charge on the subject of freedom from fault, to which defendant took an exception, stated a correct proposition of law and was within the issues formed by the pleadings, particularly by the defense of self-defense embraced within the plea of not guilty. If defendant deemed that there was no evidence of fault or aggression by defendant and that it would have been best from the standpoint of defendant for the court to have so instructed the jury in one way or another, it was incumbent upon defendant to request such an instruction. In the assertion of his contention on appeal, appellant relies upon Col- *1342 Her v. State, 57 Ala.App. 375, 328 So.2d 626, cert. denied, 295 Ala. 397, 328 So.2d 629 (1976), wherein it was held that the trial court committed reversible error in refusing a written charge requested by' defendant that pretermitted consideration of the question of freedom from fault on the subject of self-defense in a case in which, as here contended by appellant, there was no fault on the part of defendant as shown by the undisputed testimony. Instead of Collier’s being an authority in favor of appellant, it emphasizes the importance of the presentation to the trial court of the particular contention in the form of a requested written charge. To have omitted freedom from fault as an essential element of self-defense would have constituted an incomplete statement of the legal principle of self-defense. To have told the jury that there was no fault on the part of defendant would have been beyond the duty of the court, unless defendant had requested in writing such an instruction and the evidence in the case would have justified the same. The court was governed by Code 1940, Tit. 7, § 270, as follows:
“The court may state to the jury the law of the case, and may also state the evidence when the same is disputed, but shall not charge upon the effect of the testimony, unless required to do so by one of the parties.”
This is not to say that it was not within the inherent power of the court to direct the attention of the jury to any absence of evidence on the question of fault of defendant, but the court is not required to do so unless requested by one of the parties. Any confusion between the power of the court and the duty of the court in this particular respect should be clarified by what was said in Vinson v. State, 29 Ala.App. 234, 194 So. 705, 708:
“. . . Moreover, as to the point under discussion, all the evidence adduced upon the trial of this case tended to show that deceased was a trespasser on the occasion, and where this is true, no conflict in the testimony upon the point, the court had the inherent power to so charge even if not required by one of the parties to do.”
In Vinson, the court relied upon Goff et al. v. Sellers, 215 Ala. 489, 111 So. 210, 211, as follows:
“Section 9507, Code 1923 (section 2274, Code 1852), declares that the court ‘shall not charge upon the effect of the testimony, unless required to do so by one of the parties.’ It has been held that this section ‘was not intended to abridge the original, inherent power of the court to direct the attention of the jury to undisputed, admitted facts.’ Dennis v. State, 112 Ala. 64, 20 So. 925; Tidwell v. State, 70 Ala. 33. And, ‘when the record shows affirmatively that certain facts are clearly shown and not disputed — not made any part of the contention — then it is not error if they be assumed in the charge to be facts, and stated as such without hypothesis.’ ”
Appellant also argues that the oral charge on the subject of freedom from fault as an element of self-defense was erroneous for the reason that “the prosecution has the burden of proving that the Defendant was at fault in bringing on the difficulty.” There was nothing in the court’s charge to the contrary. In fact, the court at the written request of defendant so instructed the jury in defendant’s charge No. 5, which ended:
“. . . and if the jury believe from all the evidence that defendant acted under such circumstances as above set out, the burden of showing that he was not free from fault in bringing on the difficulty is on the State, and, if not shown, the jury should acquit.”
No part of the oral charge of the court to which exception was taken or an objection made was erroneous; all valid charges requested by defendant in writing were given.
We find no error in the record prejudicial to defendant. The judgment appealed from should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. *1343 Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.